74 Cal.Rptr.2d 492 (1998)
63 Cal.App.4th 1333
20TH CENTURY INSURANCE COMPANY, Plaintiff and Respondent,
v.
Edwina M. STEWART, Defendant and Appellant.
No. D025298.
Court of Appeal, Fourth District, Division One.
April 23, 1998.
*493 David R. Miller and Terry G. Kasbeer, Vista, for Defendant and Appellant.
Horvitz & Levy, David S. Ettinger, John Gueli, H. Thomas Watson, Encino, Ramsay & Johnson, and Phillip E. Smith, Irvine, for Plaintiff and Respondent.
McDONALD, Associate Justice.
Edwina M. Stewart (Stewart) appeals a judgment that the homeowners insurance policy issued by 20th Century Insurance Company (20th Century) did not provide liability coverage for Stewart's claim because her claim was for injuries that were a foreseeable consequence of a criminal act.

I

FACTS AND PROCEDURAL BACKGROUND
This declaratory relief action, filed by 20th Century against Stewart, was submitted to the court for decision on stipulated facts. The evening of December 31, 1993, 19-year-old Matthew Guglietti (Guglietti) and friends held a New Year's Eve party at Guglietti's home. Guglietti became intoxicated, took a.38-caliber revolver from his parents' bedroom, inserted one bullet in the revolver's chamber, pointed the revolver at his friend Doug Revere (Revere) and pulled the trigger. The revolver did not fire. He then pointed the revolver at his own head and pulled the trigger; the revolver did not fire. *494 He then replaced the revolver in his parents' bedroom.
The next day the party continued at Guglietti's home. Guglietti continued to drink alcohol and also smoked marijuana. During the evening Guglietti's friend Govinda Sean DiGeronimo (DiGeronimo) arrived at the home. Guglietti again took the revolver from his parents' bedroom, pointed it at DiGeronimo and pulled the trigger. The revolver discharged. DiGeronimo fell and said: "You shot me. Call 911." Guglietti stated: "It was an accident. I didn't know it was loaded." DiGeronimo died from the gunshot wound.
Guglietti was charged by felony complaint with the murder of DiGeronimo (Pen.Code, § 187, subd. (a)) and with assault with a firearm on Revere (Pen.Code, § 245, subd. (a)(2)). The complaint also alleged personal firearm use enhancements (Pen.Code, § 12022.5, subd. (a)) and charged Guglietti with several vehicle code violations not directly related to DiGeronimo's death. Pursuant to a plea bargain, Guglietti pleaded guilty to voluntary manslaughter (Pen. Code, § 192, subd. (a)) and admitted the firearm use allegation. The remaining charges were dismissed. He was sentenced to a 10-year prison term.
Stewart, DiGeronimo's mother, asserted a wrongful death claim against Guglietti, who referred the claim to 20th Century, which had issued a homeowners insurance policy (Policy) to his parents. 20th Century then filed this declaratory relief action against Guglietti, Guglietti's parents and Stewart, seeking a determination that Stewart's claim was not covered by the Policy. Stewart then filed a wrongful death action against Guglietti, who tendered defense of the action to 20th Century. 20th Century agreed to assume defense of the wrongful death action under a reservation of rights. Stewart and 20th Century then entered into a settlement agreement pursuant to which 20th Century paid Stewart $30,000, Stewart dismissed with prejudice her suit against Guglietti, and Stewart and 20th Century agreed to continue to judgment the declaratory relief action filed by 20th Century. If the declaratory relief action determined Stewart's claim was covered by the Policy, 20th Century would pay to Stewart the $270,000 balance of the Policy limits; if it determined Stewart's claim was not covered, 20th Century would owe Stewart nothing further. The settlement agreement provided that either party has the right to appeal an adverse judgment.
The Policy contained the following exclusion from coverage:
"[b]odily injury or property damage which is a foreseeable result of an intentional or criminal act of any insured or which is in fact intended by any insured."
The trial court found this exclusion was unambiguous and provided an objective standard for application. It concluded DiGeronimo's death was a foreseeable consequence of a criminal act and there was no coverage under the Policy for Stewart's wrongful death action. Judgment was entered in favor of 20th Century. Stewart appeals.

II

DISCUSSION

A

Stewart's Contentions
Stewart contends that an insurance policy coverage exclusion must be narrowly construed in favor of coverage, that the criminal act exclusion clause, in the Policy is ambiguous and that an ambiguous clause must be interpreted in favor of the insured's expectation of coverage. She then argues that Guglietti's crime was premised on negligence and the insured under the policy reasonably expected coverage for damages caused by the negligence of a named insured. She alternately argues that coverage of her claim is not barred by Civil Code[1] section 2773 and that the Policy's criminal act exclusion should not bar any claim not barred by section 2773. Under section 2773,[2] she argues, coverage is *495 not barred unless Guglietti had actual knowledge he would harm DiGeronimo when he pulled the revolver's trigger. (See State Farm Fire & Casualty Co. v. Eddy (1990) 218 Cal.App.3d 958, 267 Cal.Rptr. 379.) Because Guglietti did not have actual knowledge the revolver would fire when he pulled the trigger while pointing the revolver at DiGeronimo, we conclude the criminal acts exclusion, interpreted as being coextensive with section 2773, does not bar the claim.[3]

B

Standard of Review
This appeal requires us to interpret the criminal acts coverage exclusion of the Policy. No extrinsic evidence was introduced in the trial court to aid in the interpretation of the Policy and the matter was submitted to the trial court on stipulated facts. Under these circumstances we are presented with a question of law and our review is de novo. (See California Appellate Practice Handbook, Appellate Court Committee, San Diego County Bar Association (6th ed.1998) ch. 1, § 1.43, pp. 12, 13.)

C

Ambiguity
Stewart contends the Policy's criminal act exclusion is ambiguous because it is unclear whether its applicability (1) requires a criminal prosecution, (2) can be determined unilaterally by the insurer or requires a conviction, (3) requires a particular burden of proof to establish a criminal act, or (4) depends on the commission of only certain, rather than any, criminal acts. Furthermore, Stewart argues, the Policy does not define a criminal act.
An insurance policy provision is ambiguous if it is subject to two or more reasonable interpretations. (Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co. (1993) 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 855 P.2d 1263.) However, the determination of ambiguity must be made in the context of the facts of the case and not in the abstract. (Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1265, 10 Cal. Rptr.2d 538, 833 P.2d 545.)
Stewart has proffered several factual circumstances which, if applicable, arguably would subject the Policy's criminal act exclusion to several reasonable interpretations. However, she does not suggest alternative reasonable interpretations under the facts of this case. Here, Guglietti was prosecuted for a criminal offense; was convicted of a criminal offense based on a plea of guilty and not on a determination of guilt made by 20th Century; pleaded guilty, making irrelevant the burden of proof; and was sentenced to a 10-year prison term. The criminal offense was a serious felony, not a misdemeanor or infraction. Under these circumstances we conclude the criminal act exclusion is not ambiguous. The exclusion, under the facts of this case, clearly and unambiguously excluded coverage for an injury which is a foreseeable result of a criminal act. Stewart does not contend Guglietti's act was not a criminal act or the injury was not a foreseeable result of the criminal act.
Although no reported California decision appears to have considered whether and under which circumstances the criminal act exclusion is ambiguous, a number of other jurisdictions have determined that the exclusion is unambiguous. (See, e.g., Allstate Ins. Co. v. Brown (7th Cir.1994) 16 F.3d 222, 226 and cases cited therein; Allstate Ins. Co. v. Freeman (1989) 432 Mich. 656, 443 N.W.2d 734, 748, and cases cited therein.) We discern no reason to adopt a different rule for California.
Even were we to conclude the criminal act exclusion in this case is ambiguous, *496 and thereby reach the issue of the reasonable expectation of coverage of the insured, we would conclude Stewart had no reasonable expectation that the Policy covered liability for Guglietti's killing of DiGeronimo. Stewart posits that the criminal act of involuntary manslaughter[4] is based on and really nothing more than negligence and that an insured would reasonably expect the Policy would cover injury caused by an insured's negligence.
Stewart's characterization of Guglietti's action as being based or premised on negligence trivializes his conduct. This is not a case in which a revolver was negligently mishandled and fired by mistake or inadvertence. Guglietti deliberately and intentionally pointed the revolver at DiGeronimo and deliberately and intentionally pulled the trigger. What is unknown is Guglietti's state of mind when he pulled the trigger. Presumably his purpose was not to injure DiGeronimo; nevertheless, he killed him after having placed one bullet in the revolver and firing twice without the bullet reaching the chamber. His conduct was with such disregard for human life that it could be considered to have been committed with implied malice and therefore have constituted second degree murder.[5]
Under these circumstances we conclude the insured could not reasonably have expected the Policy's coverage for injury caused by negligence to have covered Guglietti's criminal act.

D

Section 2773
Section 2773 makes void an agreement to indemnify another for a later act that is known to be unlawful. (See State Farm Fire & Casualty Co. v. Eddy, supra, 218 Cal.App.3d 958, 968, 267 Cal.Rptr. 379.) Stewart contends her claim is not barred by section 2773 because it is not shown that Guglietti had actual knowledge his act was unlawful and therefore cannot be barred by the Policy's criminal act exclusion. Her contention, although not so articulated, is that the Policy's criminal act exclusion merely incorporates section 2773 into the Policy. Of course, were section 2773 applicable to this case, the Policy's criminal act exclusion would be irrelevant because to the extent it permitted coverage barred by section 2773 it would be void and to the extent it excluded only claims that are barred by section 2773 it would be unnecessary.
Stewart cites no authority for her argument that the Policy's criminal act exclusion is coextensive with the exclusion from indemnity set forth in section 2773. The court in Shell Oil Co. v. Winterthur Swiss Ins. Co. (1993) 12 Cal.App.4th 715, 749, 15 Cal. Rptr.2d 815, rejected a similar argument made under Insurance Code section 533, which provides: "An insurer is not liable for a loss caused by the willful act of the insured...." A claim is not barred by Insurance Code section 533 unless the insured intended to inflict injury by his act. (See fn. 3, ante.) The court in Shell Oil held that "an insurer may place more restrictions on the liability it assumes than those set forth by section 533." (Shell Oil Co. v. Winterthur Swiss Ins. Co., supra, at p. 749, 15 Cal. Rptr.2d 815.) Similarly, 20th Century may place more restrictions on liability it assumes than those set forth in section 2773, and it *497 has done so with the Policy's criminal act exclusion.

DISPOSITION
The judgment is affirmed. 20th Century is awarded costs on appeal.
WORK, Acting P.J. and McINTYRE, J., concur.
NOTES
[1] All further statutory references are to the Civil Code unless otherwise specified.
[2] Section 2773 provides: "An agreement to indemnify a person against an act thereafter done, is void, if the act be known by such person at the time of doing it to be unlawful."
[3] We interpret the Eddy case differently than does Stewart. Under Eddy the section 2773 bar to coverage does not apply unless the insured knew he was committing an unlawful act, not that he knew his act would cause injury. Eddy interpreted the Insurance Code section 533 bar to coverage for willful acts to require an intent to injure. (State Farm Fire & Casualty Co. v. Eddy, supra, 218 Cal.App.3d 958, 968-970, 267 Cal. Rptr. 379; see also Interinsurance Exchange v. Flores (1996) 45 Cal.App.4th 661, 671-673, 53 Cal.Rptr.2d 18.) However, 20th Century does not contend coverage under the Policy is barred by either section 2773 or Insurance Code section 533 but rather by the terms of the Policy.
[4] Guglietti pleaded guilty to voluntary manslaughter, not involuntary manslaughter. However, both Stewart and 20th Century seem to agree that the facts of the case appear to support guilt of involuntary manslaughter rather than voluntary manslaughter. To some extent we agree because the stipulated facts do not show a killing based on either imperfect self-defense or in heat of passion in response to adequate provocation. However, Guglietti's plea was to avoid a conviction of murder, and the stipulated facts may well support a finding of implied malice and therefore second degree murder.
[5] "Murder of the second degree is the unlawful killing of a human being when:

"1. The killing resulted from an intentional act,
"2. The natural consequences of the act are dangerous to human life, and
"3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.
"When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being." (CALJIC No. 8.31.)